**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CHRISTOPHER CORBIN and RICH SERONICK Individually, and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 25-50003-TMH |
| | ) | |
| HILCO MERCHANT RESOURCES, LLC, | ) | |
| | ) | **Related Adv. D.I. 70, 71, 77, 78, 84** |
| Defendant. | ) | |

**REPLY IN SUPPORT OF
DEFENDANT HILCO MERCHANT RESOURCES, LLC'S MOTION TO DISMISS
<u>PLAINTIFFS' AMENDED COMPLAINT</u>**

Mark L. Desgrosseilliers (No. 4083)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
desgross@chipmanbrown.com

Christina M. Berish (Admitted pro hac vice)
David Duffy (Admitted pro hac vice)
**THOMPSON COBURN LLP**
55 East Monroe Street, 37th Floor
Chicago, Illinois 60603
(312) 346-7500
cberish@thompsoncoburn.com
dduffy@thompsoncoburn.com

*Counsel for Hilco Merchant Resources LLC*

**TABLE OF CONTENTS**

**Page**

ARGUMENT 2

I. Plaintiffs' claims fail because the Final Store Closing Order and the Store Closing Agreement preclude Plaintiffs' claims ................................................................... 2

    A. To maintain this action, Plaintiffs must invalidate provisions of both the Final Store Closing Order and the Store Closing Agreement ................................ 2

    B. Plaintiffs' attempts to invalidate the Final Store Closing Order fail ..................... 3

        1. Plaintiffs cite inapposite case law to argue that the law of the case should not apply here ............................................................... 3

        2. The Final Store Closing Order does not violate 28 U.S.C. § 959(b) .......... 6

        3. Plaintiffs' argument about modifying the Final Store Closing Order relies on a single, inapposite case ............................................. 7

    C. The Store Closing Agreement is not an improper "special contract" ..................... 8

II. Besides being precluded by the Final Store Closing Order and Store Closing Agreement, Count 1 otherwise fails to state a claim and should be dismissed .................. 9

    A. Plaintiffs forfeit any argument that Hilco meets the statutory definition of employer in the Massachusetts Wage Act under Segal v. Gentrix, LLC ............... 9

    B. Plaintiffs misstate the applicability of Jinks v. Credico (USA) LLC and the doctrine of joint employer liability ........................................................ 9

    C. Plaintiffs' arguments about the remaining elements of the Wage Act fail ........... 11

III. Plaintiffs fail to state an intentional misrepresentation claim against Hilco ..................... 11

    A. Plaintiffs do not plead an alleged misrepresentation was made to Plaintiffs, and Plaintiffs have not pleaded this claim with particularity ................................ 11

    B. Plaintiffs fail to respond to Hilco's other arguments about the Amended Complaint's failure to state a claim for intentional misrepresentation ................. 13

IV. Plaintiffs fail to respond to Hilco's arguments about the Amended Complaint's failure to state a claim for negligent misrepresentation ........................................... 14

V. Plaintiffs cannot maintain an unjust enrichment claim against Hilco ........................... 14

A.      Plaintiffs allege no reasonable expectation of compensation from Hilco............. 14

B.      Plaintiffs have an adequate remedy at law............................................................ 15

CONCLUSION ..................................................................................................................... 15

4920-8166-6396, v. 1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advance Dx, Inc. v. YourBio Health, Inc.*, 753 F. Supp. 3d 53 (D. Mass. 2024) ..........................15

*Best Med. Int'l, Inc. v. Buchanan Ingersoll & Rooney PC*, No. 20-1077,
   2021 WL 2954103 (W.D. Pa. Mar. 15, 2021) .................................................................2

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988)............................5

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 918 N.E.2d 36
   (2009)...............................................................................................................................14

*Depianti v. Jan-Pro Franchising Int'l, Inc.*, 465 Mass. 607, 990 N.E.2d 1054
   (2013)...............................................................................................................................10

*Depianti v. Jan-Pro Franchising Intern., Inc.,* 39 F. Supp. 3d 112 (D. Mass. 2014)..............14, 15

*Dreibelbis v. Scholton*, 274 F. App'x 183 (3d Cir. 2008)....................................................2, 10, 15

*Guldseth v. Family Medicine Assocs. LLC*, 45 F.4th 526 (1st Cir. 2022) ....................................15

*In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432 (3d Cir. 2009) ......................3, 4

*In re Phillips Services (Delaware), Inc.*, 267 B.R. 62 (Bankr. D. Del. 2001) .........................3, 4, 7

*In re PSA, Inc.*, 335 B.R. 580 (Bankr. D. Del. 2005) ....................................................................6

*In re Scott Housing Systems, Inc.*, 91 B.R. 190 (Bankr. S.D. Ga. 1988)....................................6, 7

*In re Trans World Airlines, Inc.*, 275 B.R. 712 (Bankr. D. Del. 2002) ..........................................6

*In re VistaCare Group, LLC*, 678 F.3d 218 (3d Cir. 2012) ............................................................6

*In re White Crane Trading Co., Inc.*, 170 B.R. 694 (Bankr. E.D. Cal. 1994) ...............................6

*Jackson v. NuVasive, Inc.*, No. 21-53-RGA, 2023 WL 6387866
   (D. Del. Sept. 29, 2023) ...............................................................................................2, 10

*Jinks v. Credico (USA) LLC*, 488 Mass. 691, 177 N.E.3d 509 (2001) ...............................9, 10, 11

*Khelfaoui v. Lowell Sch. Comm.*, 496 F. Supp. 3d 683 (D. Mass. 2020) ...............................13, 14

*Metro. Prop. and Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc.*,
   266 F. Supp. 3d 502 (D. Mass. 2017) ...............................................................................13

*Midlantic Nat'l Bank v. N.J. Dep't Envtl. Prot.*, 474 U.S. 494 (1986)...........................................7

4920-8166-6396, v. 1

*Omori v. Brandeis Univ.*, 635 F. Supp. 3d 47 (D. Mass. 2022)....................................................15

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
    288 A.3d 1138 (Del. Ch. 2023)................................................................................5

*Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron*,
    123 F.3d 111 (3d Cir. 1997)....................................................................................3

*Ratchford v. Orange Lantern, Inc.*, 720 F. Supp. 3d 64 (D. Mass. 2024) ....................................15

*Rosa v. X Corp.*, No. 2:23-cv-22908 (BRM) (AME), 2024 WL 4903619
    (D.N.J. Nov. 27, 2024)............................................................................................2

*Scott v. NG U.S. 1, Inc.*, 450 Mass. 760, 881 N.E.2d 1125 (2008)....................................................5

*Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70 (D. Mass. 1998) ....................................11, 12

*Segal v. Genitrix, LLC*, 478 Mass. 551, 87 N.E.3d 560 (2017)....................................................9

*Sosa v. 28Freight LLC*, 774 F. Supp. 3d 410 (D. Mass. 2025)....................................................8

**Statutes and Constitutional Provisions**

28 U.S.C. § 959.........................................................................................................1, 3, 6, 7
Massachusetts Wage Act ............................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................................12
Fed. R. Civ. P. 12(b)(6)......................................................................................................15
Fed. R. Bankr. P. 7009 .......................................................................................................12

Nothing in Plaintiffs' response changes the fact that the Final Store Closing Order and Store Closing Agreement preclude holding Hilco liable as an employer and therefore bar all of Plaintiffs' claims. Plaintiffs implicitly concede that they must overcome both the Final Store Closing Order and the Store Closing Agreement to maintain this action, but their arguments fall flat. Plaintiffs argue the Final Store Closing Order violates 28 U.S.C. § 959(b), but the statute, by its own language, does not apply. Plaintiffs further contend the Court can modify or strike the Final Closing Order without citing any supporting legal authority or demonstrating that Plaintiffs followed the proper procedure for seeking to challenge this Court's Final Store Closing Order. Indeed, if Plaintiffs truly believed the Final Store Closing Order was invalid, they should have sought relief in the Bankruptcy Cases before filing this action in Massachusetts state court (after which they opposed removal and transfer of this case to this Court), which they have never done.

In addition to being precluded by the Final Store Closing Order and Store Closing Agreement, the Amended Complaint fails to state any claim against Hilco. Regarding Count 1, Plaintiffs fail to respond to Hilco's argument that Hilco does not fall within any of the statutory actors within the Wage Act that can be liable to CTS employees. Plaintiffs incorrectly argue that Hilco is a joint employer, relying on an inapposite Massachusetts court case. The doctrine of joint employer liability does not apply here. Additionally, Plaintiffs cite no case law for the proposition that retention bonuses qualify as wages under the Wage Act.

Plaintiffs' intentional misrepresentation claim fails because Plaintiffs do not plead that a misrepresentation was made to Plaintiffs by Hilco or repeated to Plaintiffs, and Plaintiffs did not plead this claim with particularity. Additionally, Plaintiffs fail to respond to Hilco's arguments that Plaintiffs alleged no statement that could give rise to reasonable reliance. Nor have Plaintiffs alleged sufficient facts to give rise to a plausible inference of fraudulent intent. Plaintiffs'

negligent misrepresentation claim fails because the alleged representation is not actionable.  At most, it is a vague promise of future conduct, and Plaintiffs failed to respond to this argument.

Finally, Plaintiffs' unjust enrichment claim fails because Plaintiffs have not alleged a reasonable expectation of compensation from Hilco and because Plaintiffs have an adequate remedy at law.  For these reasons, the Amended Complaint should be dismissed in its entirety.

## ARGUMENT

**I.      Plaintiffs' claims fail because the Final Store Closing Order and the Store Closing Agreement preclude Plaintiffs' claims.**

**A.      To maintain this action, Plaintiffs must invalidate provisions of both the Final Store Closing Order and the Store Closing Agreement.**

The Final Store Closing Order and the Store Closing Agreement *each* make clear that Hilco is not an "employer" and therefore cannot be held liable for wages, benefits, or any obligation to CTS's employees.  (D.I. 78, at 7).  Thus, the Final Store Closing Order and the Store Closing Agreement preclude all of Plaintiffs' claims.  (*Id.*).  In response, Plaintiffs argue that the Store Closing Agreement is void and that the relevant provision of the Final Store Closing Order is invalid or can be modified.  (D.I. 84, at 14–20, 24–25).  What Plaintiffs *do not* argue is that their claims survive if the Final Store Closing Order or the Store Closing Agreement remain in full effect.  Thus, Plaintiffs concede they must overcome both the Final Store Closing Order and the Store Closing Agreement to maintain this action.[1]  This they cannot do.

---

[1] By failing to make any argument to the contrary in their response, Plaintiffs forfeit any such argument. *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (by failing to make an argument in response to a motion to dismiss, plaintiff effectively waived that argument); *see also Jackson v. NuVasive, Inc.*, No. 21-53-RGA, 2023 WL 6387866, at *2 n.1 (D. Del. Sept. 29, 2023); *Best Med. Int'l, Inc. v. Buchanan Ingersoll & Rooney PC*, No. 20-1077, 2021 WL 2954103, at *6 (W.D. Pa. Mar. 15, 2021); *Rosa v. X Corp.*, No. 2:23-cv-22908 (BRM) (AME), 2024 WL 4903619, at *10 (D.N.J. Nov. 27, 2024) (collecting cases).

4920-8166-6396, v. 1

B.      **Plaintiffs' attempts to invalidate the Final Store Closing Order fail.**

Plaintiffs proffer several red herring arguments seeking to obviate the Final Store Closing Order.  First, Plaintiffs argue against applying the law of the case doctrine.  (D.I. 84, at 15–18). Second, Plaintiffs argue that the provision of the Final Store Closing Order disclaiming liability for Hilco as an employer violates 28 U.S.C. § 959(b).  (*Id.* at 18–20).  Third, at the very end of the brief, Plaintiffs contend that the Court should modify or strike the Final Store Closing Order.  (*Id.* at 24).  These arguments fail for numerous reasons as set forth below.

1.      **Plaintiffs cite inapposite case law to argue that the law of the case should not apply here.**

"The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation." *Pub. Interest Research Grp. of NJ, Inc. v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir. 1997).  "A court has the power to revisit prior decisions of its own . . . in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *In re Pharmacy Benefit Managers Antitrust Litig*., 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 816 (1988)). Other such "extraordinary circumstances" include when "new evidence is available" or "a supervening new law has been announced." *Id.* (citing *Magnesium Elektron*, 123 F.3d at 117). No such extraordinary circumstances apply here.

Plaintiffs argue against applying the law of the case doctrine, relying on *In re Phillips Services (Delaware), Inc.*, 267 B.R. 62 (Bankr. D. Del. 2001). In *Phillips*, the court found a provision of a "Cash Collateral Stipulation" did not bar the defendant from raising a fraudulent conveyance defense to an avoidance and turnover action.  *Id.* at 66–67.  The court found, "[t]he provision in the Cash Collateral Stipulation confirming the validity of the position of the Pre–

- 3 -

Petition Secured Lenders *was not intended to affect anyone else's rights* except vís-a-vís the Pre–Petition Secured Lenders nor was it intended as a final decision for all purposes in the bankruptcy case of issues tangential to the Pre–Petition Secured Lenders' claims." *Id.* (emphasis added).

Unlike the provision at issue in *Phillips*, the Final Store Closing Order was a definitive, final decision intended to affect the rights of Hilco, Debtors, and CTS's employees.  The Final Store Closing Order expressly states that Hilco "shall not be deemed to be an employer, a joint or successor employer, or a related or common employer or payor within the meaning of any legislation governing employment or labor standards, health and safety, or other statute, regulation or rule of law or equity for any purpose whatsoever[.]" (D.I. 78-2, at 25, ¶ 48).  The Final Store Closing Order further provides that "[t]he Debtors shall not be required to comply with any state or local law requiring that the Debtors pay an employee substantially contemporaneously with his or her termination, including but not limited to Fast Pay Laws[.]" (*Id.* at 25, ¶ 49).  Moreover, the Final Store Closing Order makes explicit that "[t]his Final Store Closing Order . . . shall be binding on the Debtors' creditors (whether known or unknown) . . . and any affected third parties[.]" (*Id.* at 23, ¶ 44).  The Court specifically determined "[t]he entry of this Final Order" and "the relief sought in the [Store Closing] Motion is in the best interest of the Debtors, their estates, their creditors and all other parties in interest." (*Id.* at 2, 4).

The law of the case doctrine applies here, and Plaintiffs have identified no "extraordinary circumstances" warranting an exception to its application.  *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439.  Plaintiffs attempt to manufacture extraordinary circumstances by making various factual assertions without citing to the Amended Complaint. (D.I. 84, at 17).  This includes Plaintiffs' unsupported assertion of "alter ego" and "single integrated enterprise"

- 4 -

regarding Hilco and ReStore.[2]  (*Id.*).  But Plaintiffs admit the Court was aware in 2023 that Hilco and ReStore were separate entities involved with the Debtors in different ways.  (D.I. 70, at ¶¶ 32, 35; *see also* Bankr. D.I. 23).

Plaintiffs' contention that they did not receive notice of the Store Closing Motion is also misplaced.  (D.I. 84, at 20).  The Store Closing Motion was filed on May 7, 2023.  (Bankr. D.I. 20).  Both Plaintiffs were listed on the *Matrix of Creditors* that Debtors submitted to the Bankruptcy Court on May 19, 2023.  (Bankr. D.I. 105, at 101, 329).  Thus, both Plaintiffs received notice of the Bankruptcy Cases before the Court entered the Final Store Closing Order on May 31, 2023.  (Bankr. D.I. 201).  Additionally, Plaintiffs are incorrect that the Store Closing Motion was not litigated.  (D.I. 84, at 20).  The Official Committee of Unsecured Creditors filed an omnibus objection to the Store Closing Motion on May 30, 2023.  (Bankr. D.I. 155).  The Court held a hearing on May 31, 2023.  (Bankr. D.I. 197).  Plaintiffs were provided notice of and have been afforded a full and fair opportunity to participate in Debtors' Bankruptcy Cases.

In sum, Plaintiffs have not established that any exception to the law of the case doctrine applies here, and the Final Store Closing Order should bar all claims.

---

[2] The phrases "alter ego" and "single enterprise" appear nowhere in the Amended Complaint.  (D.I. 70).  Plaintiffs have not pleaded either theory.  Plaintiffs alleged that CTS entered into a consignment agreement with ReStore Capital (CTS), LLC ("ReStore"), a Hilco affiliate, which provided that CTS would retain Hilco as a consultant if CTS elected to conduct going-out-of-business sales.  (*Id.* at ¶¶ 12, 14).  Plaintiffs allege that Ian Fredericks was President of both Hilco and ReStore.  (*Id.* at ¶ 13).  Plaintiffs later allege that ReStore Capital, LLC ("Restore Capital"), another Hilco affiliate, entered into a loan agreement with CTS and became one of CTS's Debtor-in-Possession Lenders.  (*Id.* at ¶ 35).  Throughout their Amended Complaint and response, Plaintiffs improperly conflate various entities without making it clear to which entity they are referring.  However, as Hilco explained in its motion, there is a presumption of separateness between corporations under Massachusetts law (and applicable Delaware laws).  *See Scott v. NG U.S. 1, Inc.*, 450 Mass. 760, 766–67, 881 N.E.2d 1125 (2008) ("[C]orporations—notwithstanding relationships between or among them—ordinarily are regarded as separate and distinct entities."); *see also Principal Growth Strategies, LLC v. AGH Parent LLC*, 288 A.3d 1138, 1162 (Del. Ch. 2023) ("[O]ur corporation law is largely built on the idea that the separate legal existence of corporate entities should be respected—even when those separate corporate entities are under common ownership and control.").  Plaintiffs cannot use the contracts or acts of a different entity to state a claim against another.

- 5 -

**2.      The Final Store Closing Order does not violate 28 U.S.C. § 959(b).**

Plaintiffs' response asserts that 28 U.S.C. § 959(b) prevented Hilco from conducting CTS store closing sales in a manner inconsistent with the Wage Act.  (D.I. 84, at 18–20).  This argument is nothing more than a red herring.  Plaintiffs cite no Third Circuit case law finding that § 959(b) applies to a consultant like Hilco or to store closing orders and agreements, like those at issue here.  The statute applies to trustees, receivers, debtors, and debtors in possession. *See In re PSA, Inc.*, 335 B.R. 580, 586 (Bankr. D. Del. 2005); *In re Trans World Airlines, Inc.*, 275 B.R. 712, 722 (Bankr. D. Del. 2002).  Plaintiffs do not even explicitly argue the statute applies to Hilco.

Plaintiffs rely heavily on an inapposite case, *In re White Crane Trading Co., Inc.*, 170 B.R. 694 (Bankr. E.D. Cal. 1994), in which the court approved a post-petition liquidation sale agreement between the debtor in possession and a merchant after the merchant failed to disclose an injunction barring it from participating in such a sale absent full compliance with California laws.  *Id.* at 698– 99.  After discovering the injunction and "a hotbed of consumer protection issues," the chapter 7 trustee, to satisfy his obligations under § 959(b), moved to revoke the order approving the upcoming sale, and the California Attorney General joined the motion.  *Id.* at 698, 700.  The court determined it could not authorize the sale.  *Id.* at 701.  That is simply nothing like the case at hand.  Plaintiff has not sued under 28 U.S.C. § 959(a), nothing in any of the cases Plaintiffs cite suggests that 28 U.S.C. § 959(b) applies to a consultant like Hilco, and the sales here already occurred.

Plaintiffs also cite *In re Scott Housing Systems, Inc.*, 91 B.R. 190 (Bankr. S.D. Ga. 1988), a case in which the court discussed the narrow scope of § 959(b) and found that the statute does not apply to liquidations.  *Id.* at 195–96 ("The 'manage and operate' language of Section 959(b) when read in conjunction with Section 959(a) . . . , evidences a statutory intent that Section 959 applies when the business is being operated, not when its operations have ceased and its assets are being liquidated."); *see also In re VistaCare Group, LLC*, 678 F.3d 218, 226–27 (3d Cir. 2012)

- 6 -

(finding Congress enacted § 959(a) "for situations where the receiver was 'continu[ing]' the debtor's business, rather than simply administering the estate," and therefore § 959(a) does not apply to liquidation of assets in the debtor's estate).  The court in *Scott Housing* stated,

> In reaching this conclusion, I do not suggest that a debtor-in-possession or trustee who is liquidating the assets of the estate may operate carte blanche.  Clearly, their actions are constrained by "state statute[s] or regulation[s] that [are] reasonably designed to protect the public health or safety from *identified* hazards". [*Midlantic Nat'l Bank v. N.J. Dep't Envtl. Prot.*, 474 U.S. 494, 507 (1986)] (emphasis added).  Identified hazards are narrowly construed as "imminent and identifiable harm".  *Id.* n.9.  The public interest to be protected here is, however, not in such a category.

91 B.R. at 196.  The interests at issue in the complaint are pecuniary interests of the former employees of the Debtors, in short potential monetary claims of such former employees, not state statutes designed to protect "public health or safety" with which this Court and other bankruptcy courts compel Debtors to comply.  Indeed, as this Court is aware, the order and agreement at issue are squarely in line with similar orders and agreements the Court approves in almost every liquidating retail bankruptcy case.  Plaintiffs' argument that the Final Sale Closing Order can simply be disregarded is contrary to precedent applicable in this jurisdiction and is a red herring.

> **3.     Plaintiffs' argument about modifying the Final Store Closing Order relies on a single, inapposite case.**

Plaintiffs make a last-ditch argument that the Court may modify the Final Store Closing Order and strike any provisions disclaiming liability for Hilco as a joint employer.  (D.I. 84, at 24). The only case Plaintiffs cite for this proposition is *In re Phillips Services*, 267 B.R. at 68.  As explained above, that case is distinguishable and has no application here because it involved a provision of a stipulation the court found was not intended to affect the rights of any third parties. *Id.* at 66–67.  In fact, the words "modify" and "strike" do not appear in the *Phillips* decision at all. Plaintiffs cite no legal authority relevant to their argument.  Further, public policy supports finality of court orders, especially where the parties then took actions based on those orders.  This final

argument fails to salvage Plaintiffs' claims. Ultimately, Plaintiffs provide no basis to collaterally challenge the Final Store Closing Order years after entry and after the liquidations took place. Because the Final Store Closing Order remains in full effect, Plaintiffs' filing of their allegations against Hilco are in contravention and contempt of and expressly prohibited by the Final Store Closing Order. For this reason, the Amended Complaint should be dismissed in its entirety.[3]

### C. The Store Closing Agreement is not an improper "special contract."

Plaintiffs' arguments regarding the Store Closing Agreement also fail. Plaintiffs assert that the Store Closing Agreement is void because it qualifies as a "special contract" under the Wage Act. (D.I. 84, at 14–15). The Wage Act "prohibits 'special contracts' which purport to exempt an employer from the requirements of the [Wage Act]." *Sosa v. 28Freight LLC*, 774 F. Supp. 3d 410, 420 (D. Mass. 2025) (citing *Camara v. Att'y Gen.*, 458 Mass. 756, 941 N.E.2d 1118, 1121 (2011)); *see also* M.G.L. c. 149, § 148 ("No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty."). Of course, this requirement only applies to employers, which as demonstrated by the sections above and below, Hilco is not. *See Sosa*, 774 F. Supp. 3d at 420. Additionally, the Store Closing Agreement is not a "special contract with an employee" because it is an agreement between Hilco and CTS. Lastly, this argument is inconsequential because the Final Store Closing Order determined that "Fast Pay Laws" such as the Wage Act do not apply to CTS's employees in the Bankruptcy Cases. (D.I. 78-2, at 25, ¶ 49).[4]

---

[3] Hilco expressly reserves all of its rights with to this contumacious conduct by counsel for the Plaintiffs.
[4] This is another instance where this Court's order expressly permits conduct that might otherwise subject a Debtor to damages under otherwise applicable state law.

4920-8166-6396, v. 1

II. **Besides being precluded by the Final Store Closing Order and Store Closing Agreement, Count 1 otherwise fails to state a claim and should be dismissed.**

A. **Plaintiffs forfeit any argument that Hilco meets the statutory definition of employer in the Massachusetts Wage Act under *Segal v. Gentrix, LLC*.**

As explained in Hilco's motion, the Supreme Judicial Court of Massachusetts ("SJC") interpreted the definition of employer under the Wage Act in *Segal v. Genitrix, LLC*, 478 Mass. 551, 558, 87 N.E.3d 560 (2017). In *Segal*, the SJC held that for corporations, those subject to liability under the Wage Act "are the 'president and treasurer of [the] corporation and any officers or agents having the management of such corporation,' in addition to the corporation itself." *Id*. Hilco argued in its motion to dismiss that it does not fall within any of these categories and does not qualify as an "agent having the management" of CTS and therefore is not subject to liability to CTS's employees under the Wage Act.  (D.I. 78, at 9–10).   Plaintiffs' response does not substantively respond to Hilco's argument. (D.I. 84, at 11–12). Plaintiffs do not argue Hilco is a statutory employer under *Segal*.  Plaintiffs do not argue Hilco is an agent having the management of the company.  Indeed, the express terms of the Final Store Closing Order and Store Closing Agreement provide exactly the opposite, *i.e.*, Hilco is acting solely as an independent consultant of the Debtors and cannot be deemed to have such management authority.  (Bankr. D.I. 201, at 25, ¶ 48; Bankr. D.I. 20, at 43, § N).  In any event, by failing to respond, Plaintiffs forfeit these arguments. *See Dreibelbis*, 274 F. App'x at 185.

B. **Plaintiffs misstate the applicability of *Jinks v. Credico (USA) LLC* and the doctrine of joint employer liability.**

Plaintiffs further cite a single, inapposite case to argue Hilco is a joint employer subject to the Wage Act under *Jinks v. Credico (USA) LLC*, 488 Mass. 691, 177 N.E.3d 509 (2001).  (D.I. 84, at 11–12).  But the *Jinks* decision and the doctrine of joint employer liability do not apply, and the Final Store Closing Order had precisely the opposite finding.  (Bankr. D.I. 201, at 25, ¶ 48).

- 9 -

In *Jinks*, the SJC rejected the argument that "an entity is an individual's employer so long as the individual is 'performing any service' from which the entity derives an economic benefit." 488 Mass. at 696. Rather, the SJC explained, "the entity for whom the individual directly performs services is ordinarily the individual's employer responsible for compliance with the wage laws." *Id.* at 697 (citing *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 465 Mass. 607, 990 N.E.2d 1054 (2013)). If, for example, "company A contracts with company B for services, and company B enters into arrangements with third parties to perform the work it undertook under its contract with company A," ordinarily, company A would not be liable for company B's misclassification of third-party workers. *Id.* at 696–97 (quoting *Depianti*, 465 Mass. at 624 n.17). Under *Jinks*, one exception to this rule is joint employer liability, which turns on whether company A, in contracting with company B, "retained for itself sufficient control over the terms and conditions of employment" of the third-party workers company B hired. *Id.* at 699.

The court's hypothetical shows why the joint employment doctrine does not apply here. In the above hypothetical, CTS is "company A," and Hilco is "company B." CTS contracted with Hilco for services, but Plaintiffs are not alleging that Hilco hired them as third-party workers and CTS should also be an employer—Plaintiffs were already CTS employees. *See id.* at 696–97. If Hilco had hired independent third-party workers, the doctrine of joint employer liability would permit the court to assess whether CTS retained sufficient control over the terms and conditions of employment of Hilco's third-party workers. *See id.* at 699. Because Plaintiffs allege that they were CTS employees, not third-party workers hired by Hilco to perform its work under the agreement, *Jinks* does not apply here. *See id.* at 699

Moreover, Plaintiffs have not pleaded, and cannot plead, Hilco had the power to hire or fire CTS's store employees, supervised and controlled employee work schedules or conditions of

employment, determined the rate and method of payment, or maintained employment records. *See id.* at 703. Plaintiffs cite no portion of the Amended Complaint alleging facts to support any such contention. (D.I. 84, at 11). The doctrine of joint employer liability simply does not apply here. Therefore, Plaintiffs fail to state a claim under the Wage Act.

### C. Plaintiffs' arguments about the remaining elements of the Wage Act fail.

Plaintiffs concede they have been paid their final pay period wages and accrued vacation pay. (D.I. 84, at 13–14). Yet, Plaintiffs assert they are entitled to treble damages for their wages, accrued vacation pay, and the retention bonuses. (*Id.* at 14). Plaintiffs do not cite any case law for the proposition that retention bonuses constitute "wages" under the Wage Act. (*Id.*). Plaintiffs merely state that the SJC will be deciding a case that addresses that question. (*Id.*). Hilco cited numerous cases in its motion to dismiss that stand for the proposition that retention bonuses do not qualify as "wages" under the Wage Act. (D.I. 78, at 11).

### III. Plaintiffs fail to state an intentional misrepresentation claim against Hilco.

### A. Plaintiffs do not plead an alleged misrepresentation was made to Plaintiffs, and Plaintiffs have not pleaded this claim with particularity.

In this case, Plaintiffs do not claim Hilco made a misrepresentation to Plaintiffs. Instead, Plaintiffs seek to sue Hilco for a statement made by CTS (which does not even refer to Hilco). (D.I. 84, at 20–22). Plaintiffs argue that, despite this, they should be permitted to proceed under *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70 (D. Mass. 1998), which says, in Massachusetts, "[a] cause of action for misrepresentation to third parties exists only for a misrepresentation made by Defendant to such third parties if the Defendant intended, or had reason to expect, that on repetition, the statements would influence Plaintiff's conduct to Plaintiff's detriment." *Id.* at 86 (quotations omitted). Under *Sebago*, "a claim of indirect misrepresentation requires that 'the 'terms' of the alleged misrepresentation . . . 'be repeated,' or its 'substance communicated' . . . to

the complaining party in order for an action to lie." *Id.* (quoting *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 577 F. Supp. 1281, 1287 (D. Mass. 1983)).

Tellingly, that court found the plaintiff failed to plead indirect reliance because he did not allege that the terms of the misrepresentation were repeated to the plaintiff. *Id.* The same is true here. Plaintiffs allege that "Hilco, through Fredericks, represented *to CTS*, that Hilco/ReStore intended to pay retention bonuses to Additional Store store-level employees who remained employed through the end of their store's respective liquidation sale." (D.I. 70, at ¶ 81 (emphasis added)). Plaintiffs do not allege anyone communicated *to Plaintiffs* that *Hilco/Restore* intended to pay retention bonuses. Plaintiffs also do not allege that Hilco made this purported statement prior to CTS's alleged misrepresentation to these Plaintiffs to form indirect reliance as required by *Sebago*. *Id.* at 86.

Additionally, Plaintiffs fail to plead with particularity under Rule 9(b) of the Federal Rules, made applicable by Rule 7009 of the Bankruptcy Rules. Because Plaintiffs are asserting this theory of "indirect" misrepresentation, there are two crucial representations: the alleged representation *by Hilco*, and the alleged representation by the third-party *to Plaintiffs* repeating the terms of Hilco's alleged representation. To satisfy Federal Rule 9(b), Plaintiffs must plead both of these with particularity. (D.I. 78, at 12–13).

For the alleged representation *by Hilco*, the Amended Complaint does not plead when or where Mr. Fredericks allegedly represented to Mr. Salkovitz that "Hilco/Restore intended to pay retention bonuses." (D.I. 70, at ¶ 81). Plaintiffs provide no citations to the Amended Complaint or any legal authority to dispute this. (D.I. 84, at 20–22).

For the alleged representation from CTS *to Plaintiffs*, the Amended Complaint merely alleges that Plaintiffs received an email from CTS saying they would be entitled to a retention

- 12 -

4920-8166-6396, v. 1

bonus if they met certain criteria. (D.I. 70, at ¶ 43). Plaintiffs do not allege who sent the email, the date or time it was sent, or any specific language it contained. Because Plaintiffs allegedly received this email from CTS, nothing should have prevented them from alleging specifics. In terms of timing, again, Plaintiffs do not even allege a representation by Hilco happened before CTS promised retention bonuses to these Plaintiffs.[5]

> **B.     Plaintiffs fail to respond to Hilco's other arguments about the Amended Complaint's failure to state a claim for intentional misrepresentation.**

Hilco's motion raised two additional grounds for dismissing Plaintiffs' intentional misrepresentation claim. First, Plaintiffs alleged no statement that could give rise to reasonable reliance, and second, Plaintiffs failed to allege sufficient facts to give rise to a plausible inference of fraudulent intent. (D.I. 78, at 14). These additional arguments both raise grounds for dismissal. *See Khelfaoui v. Lowell Sch. Comm.*, 496 F. Supp. 3d 683, 689 (D. Mass. 2020) ("Reasonable reliance requires evaluating whether the alleged representations were sufficiently specific that it would be reasonable to rely on them. Statements that are vague and general, or at odds with other information would not justify reliance.") (citations omitted); *see also Metro. Prop. and Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc.*, 266 F. Supp. 3d 502, 519 (D. Mass. 2017) ("[I]n order to plead fraud under Rule 9(b), the complaint must set forth 'specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.'") (quoting *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009)). Plaintiffs do not develop any meaningful response to these arguments. Plaintiffs cite no case law or legal authority in response and no allegations in the Amended Complaint regarding the

---

[5] Plaintiffs do not address in their response that Plaintiff Corbin is not a proper plaintiff for Counts 2–4, as Plaintiff Corbin was a corporate, not store-level, employee, and Plaintiffs allege CTS promised retention bonuses only to its store-level employees. (D.I. 78, at 14).

4920-8166-6396, v. 1

intentional misrepresentation claim.  (D.I. 84, at 20–22).  For these additional reasons, Plaintiffs'

intentional misrepresentation claim should be dismissed.

**IV.     Plaintiffs fail to respond to Hilco's arguments about the Amended Complaint's failure to state a claim for negligent misrepresentation.**

In its motion, Hilco argued that Plaintiffs failed to plead the elements of a negligent

misrepresentation claim and that the alleged representation that "Hilco/ReStore intended to pay

retention bonuses" is not an actionable statement because, at most, it is a promise of future conduct.

(D.I. 78, at 15–16 (quoting D.I. 70, at ¶ 88)).  Additionally, Hilco argued that such a statement is

too vague about potential circumstances and criteria to be actionable.  (*Id.* at 16).  Plaintiffs'

response merely recites the elements of negligent misrepresentation (without citing any case law

or legal authority) and asserts that Plaintiffs alleged each element (without citing any allegations

in the Amended Complaint to support this contention).  (D.I. 84, at 22).

Plaintiffs offer no response to Hilco's arguments that the alleged representation is not

actionable because, at most, it is a promise of future conduct and because the statement is too

vague.  Plaintiffs therefore forfeit any such argument.  *See Dreibelbis*, 274 F. App'x at 185.

Because Plaintiffs fail to argue that they have alleged anything more than, at most, a vague promise

of future conduct, Plaintiffs' negligent misrepresentation claim fails. *See Cumis Ins. Soc'y, Inc. v.*

*BJ's Wholesale Club, Inc.*, 455 Mass. 458, 474, 918 N.E.2d 36, 49 (2009); *see also Khelfaoui v.*

*Lowell Sch. Comm.*, 496 F. Supp. 3d 683, 689 (D. Mass. 2020).

**V.     Plaintiffs cannot maintain an unjust enrichment claim against Hilco.**

**A.     Plaintiffs allege no reasonable expectation of compensation from Hilco.**

Plaintiffs cite an outlier case to argue they can maintain an unjust enrichment claim without

pleading a reasonable expectation of compensation from Hilco.  (D.I. 84, at 23 (citing *Depianti v.*

*Jan-Pro Franchising Intern., Inc.,* 39 F. Supp. 3d 112, 142 (D. Mass. 2014)). More recent case

4920-8166-6396, v. 1

law demonstrates that, under Massachusetts law, a claim of unjust enrichment requires that the plaintiffs "reasonably expected compensation *from the defendant*." *Ratchford v. Orange Lantern, Inc.*, 720 F. Supp. 3d 64, 81 (D. Mass. 2024) (quoting *Stewart Title Guar. Co. v. Kelly*, 97 Mass. App. Ct. 325, 146 N.E.3d 1142, 1151 (2020)); *see also Guldseth v. Family Medicine Assocs. LLC*, 45 F.4th 526, 540 (1st Cir. 2022) (same); *Advance Dx, Inc. v. YourBio Health, Inc.*, 753 F. Supp. 3d 53, 72 (D. Mass. 2024) (same).  Unlike these cases, the *Depianti* decision Plaintiffs cite provides no citation to case law or any other legal authority for the notion that a plaintiff need not plead a reasonable expectation of compensation from the defendant.  39 F. Supp. 3d at 142.  Plaintiffs do not attempt to argue they reasonably expected compensation from Hilco.  (D.I. 84, at 23).  This is fatal to their unjust enrichment claim.

### B.      Plaintiffs have an adequate remedy at law.

Plaintiffs' unjust enrichment claim should also be dismissed because they have an adequate remedy at law.  Plaintiffs respond only that they can plead alternative remedies in their pleading.  (D.I. 84, at 24).  However, Plaintiff's remedies at law go beyond its case against Hilco.  As Hilco pointed out in its motion, Plaintiffs have a legal remedy for obtaining wages and retention bonuses from their employer, CTS, through the filing of claims in the Bankruptcy Cases, and Plaintiffs have an additional remedy by way of their lawsuit against the Salkovitzes under the Wage Act currently pending in Massachusetts.  Because Plaintiffs have adequate remedies available to them, they cannot pursue an unjust enrichment claim against Hilco.  *See Omori v. Brandeis Univ.*, 635 F. Supp. 3d 47, 58 (D. Mass. 2022).

### CONCLUSION

For the reasons stated above, the Court should dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

- 15 -

- 16 -

Dated: August 8, 2025                    Respectfully submitted,


                                         */s/ Mark L. Desgrosseilliers*
                                         Mark L. Desgrosseilliers (No. 4083)
                                         **CHIPMAN BROWN CICERO & COLE, LLP**
                                         Hercules Plaza
                                         1313 North Market Street, Suite 5400
                                         Wilmington, Delaware 19801
                                         (302) 295-0191
                                         desgross@chipmanbrown.com

                                         Christina M. Berish (Admitted pro hac vice)
                                         David Duffy (Admitted pro hac vice)
                                         **THOMPSON COBURN LLP**
                                         55 East Monroe Street, 37th Floor
                                         Chicago, Illinois 60603
                                         (312) 346-7500
                                         cberish@thompsoncoburn.com
                                         dduffy@thompsoncoburn.com

                                         *Counsel for Hilco Merchant Resources LLC*

4920-8166-6396, v. 1