**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHRISTMAS TREE SHOPS, LLC, *et al.*,[1]<br><br>    Debtors. | Chapter 7<br><br>Case No. 23-10576 (TMH)<br><br>(Jointly Administered) |
| Christopher Corbin and Rich Seronick,<br>Individually, and on behalf of all others<br>similarly situated,<br><br>    Plaintiffs,<br><br>      v.<br><br>Hilco Merchant Resources, LLC,<br><br>    Defendant. | Adversary No. 25-50003 (TMH) |

**PLAINTIFFS' MEMORANDUM REGARDING SUBJECT MATTER
JURISDICTION AND PERMISSIVE ABSTENTION**

Plaintiffs Christopher Corbin and Rich Seronick ("Plaintiffs") file this brief in response to the Court's September 24, 2025 request to address the Court' subject matter jurisdiction under applicable Third Circuit precedent and whether the Court should abstain under 28 U.S.C. § 1334(c)(1). (D.I. 89). Plaintiffs note that they and defendant Hilco Merchant Resources, LLC ("Hilco") were initially working towards the filing of a joint brief but concluded that separate briefs were necessary once it became apparent that they were not aligned on all issues.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). The notice address for the Debtors is 64 Leona Drive, Middleboro, Massachusetts 02346.

**INTRODUCTION**

There does not appear to be a dispute concerning the nature of this case. Plaintiffs claim that Hilco's conduct towards Christmas Tree Shop employees was that of a joint employer, thereby rendering Hilco liable for the penalties associated with late paid wages under the Massachusetts Wage Act, G.L. c. 149, § 148, and on common law causes of action related to promised retention bonuses that Hilco caused to be made to Christmas Tree Shop employees. Hilco says, without regard to its actual conduct, it is liable for nothing because this Court entered a Final Store Closing Order providing Hilco with a carte blanche disclaimer of any joint employer liability.

Responding to the Court's questions, Hilco contends that the Court has both "arising in" and "related to" subject matter jurisdiction. Plaintiffs do not disagree but believe Hilco's presentation of "arising in" jurisdiction is inaccurate in certain respects. Assuming there is subject matter jurisdiction, Hilco argues that this Court should not abstain. Candidly, Plaintiffs were initially inclined to take no position on the issue as this matter has been pending for some time, and they would like to see the substance of their claims addressed. On further consideration, however, Plaintiffs cannot review the relevant permissive abstention factors and come to any conclusion other than abstention is warranted. Although Plaintiffs' claims against Hilco implicate a prior order of this Court, even the leading case Hilco cites for the proposition that bankruptcy courts retain subject matter jurisdiction to interpret their prior orders acknowledged that abstention may still nonetheless be appropriate. If this is not such a case, it is hard to imagine the case that would be. At its core, this is a matter between two non-debtors, that raises only state law claims, that is directly related to a pending Massachusetts state court proceeding, and that will never have any practical impact on the debtors' bankruptcy estates.

## I.    The Court Has Subject Matter Jurisdiction.

"[B]ankruptcy courts have subject matter jurisdiction over four types of matters, pending referral from the district court: '(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 621 (Bankr. D. Del. 2016) (quoting 28 U.S.C. § 157). "Whether a proceeding is a 'core' proceeding that 'arises under' title 11 depends on whether the Bankruptcy Code creates the cause of action or provides the substantive right invoked." *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006) (quoting *Halper v. Halper*, 164 F.3d 830, 836, 836-37 n. 7 (3d Cir. 1999)). "Proceedings 'arise in' a bankruptcy case, 'if they have no existence outside of the bankruptcy.'" *Stoe*, 436 F.3d at 216 (quoting *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999).

Plaintiffs agree with Hilco that the Third Circuit's decision in *In re Essar Steel Minnesota*, 47 F. 4th 193 (3d Cir. 2022), relying on the Supreme Court's decision in *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009), warrants the conclusion that there is "arising in" jurisdiction in this matter. *Travelers*, the most on point, held that the need for a bankruptcy court to interpret whether its prior injunction order barred third-party lawsuits against another third-party, was sufficient to confer "arising in" jurisdiction. 557 U.S. at 151-155. That said, while the Third Circuit in *In re Essar Steel Minnesota* relied on *Travelers* to conclude that the Bankruptcy Court had jurisdiction to interpret its own orders, it went out of its way to note that the Bankruptcy Court nonetheless "has wide latitude under 28 U.S.C. § 1334(c)(1) to 'permissively abstain from any proceeding over which it has jurisdiction." 47 F.4th at 201. That a bankruptcy court retains subject matter jurisdiction to interpret a prior order does not mean it must, or should, exercise it in all instances.

3265506.1 118609-112672

Furthermore, and while perhaps irrelevant once this Court finds "arising in" jurisdiction exists, Plaintiffs nonetheless believe the remainder of Hilco's "arising in" analysis is erroneous, and particularly its reference to the Third Circuit's decision in *Stoe*. Plaintiffs offer the following discussion to demonstrate that but for the Final Store Closing Order, there would be no "arising in" jurisdiction and arguably no "related to" jurisdiction either.

In *Stoe*, the president of Zinc Corporation ("Zinc"), a division of Horsehead Industries, Inc. ("Horsehead"), entered into a severance agreement with Zinc that provided for substantial, ongoing severance payments. 436 F.3d at 211. When Horsehead filed for bankruptcy and the severance payments stopped, Stoe brought suit against various executives of Zinc and Horsehead under Pennsylvania's Wage Payment and Collection Law ("WPCL") a. *Id*. "Stoe did not name Horsehead as a defendant in the suit, but if Stoe [was] successful, the defendants [would] be entitled to indemnification for Horsehead, pursuant to Horsehead's by-laws." *Id*. at 212. Among other issues, the Third Circuit reviewed the District Court's conclusion that Stoe's claims "arose in" the bankruptcy proceeding because, according to the District Court, they were "'inextricably intertwined with the Bankruptcy Code and would not exist, but for, the bankruptcy filing.'" *Id*.

The *Stoe* Court rejected the District Court's finding of "arising in" jurisdiction, noting that "claims that 'arise in' a bankruptcy case are claims that by their nature, *not their particular factual circumstance*, *could only arise* in the context of a bankruptcy case." *Id*. at 218 (quoting *Halper*, 164 F. 3d at 836) (emphasis added) (citing *Collier on Bankruptcy* § 3.01[4][c][iv] at 3-31 (noting that "administrative matters" such as allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts, are the principal constituents of "arising in" jurisdiction and that "[i]n none of these instances is there a 'cause of action' created by statute, nor could any of the

4

matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case.). Going

further, the Court stated:

> Claims under the WPCL can clearly exist out the context of bankruptcy cases.
> The only connection that Stoe's claim has to the Horsehead bankruptcy is that,
> in the event that Stoe is successful in recovering damages for unpaid wages
> from the defendants here, those defendants will likely seek indemnification
> from Horsehead. In that sense it is "related to" the Horsehead bankruptcy
> because it could "conceivably" have an effect on the estate being
> administered.

*Id*.

The same is true here. While Hilco will undoubtedly argue that the Court has "arising in"

jurisdiction as a result of its so-called "court appointed consultant status," that argument falls

squarely within what the Third Circuit has described as insufficient to confer "arising in"

jurisdiction. That is, Plaintiffs' claims, and Hilco's potential liability, arise only as a result of the

"particular factual circumstances," and not because the claims "*could only arise* in the context of a

bankruptcy." Hilco undoubtedly can be retained as a "liquidating consultant" outside the bankruptcy

context, act as a joint employer, and face liability for state law wage and hour claims.

*In re Seven Field Dev. Corp.*, 505 F.3d 237 (3d Cir. 2007) also does not support "arising in"

jurisdiction in this matter. There, the Third Circuit found "arising in" jurisdiction on state law

malpractice claims against Ernst & Young, a court-appointed professional, reasoning "Ernst &

Young's 'alleged malpractice . . . implicated the integrity of the entire bankruptcy process' and the

'alleged malpractice was inseparable from the bankruptcy context.'" *Id*. at 260-261 (quoting *Resorts*

*Int'l Inc., Litig. Trust v. Price Waterhouse*, 372 F.3d 154, 163 (3d Cir. 2004). The Court further noted:

> According to appellants' allegations in their complaint, as a result of the work
> that Ernst & Young performed during the bankruptcy proceedings and its
> representations to the bankruptcy court, the bankruptcy court deemed the
> Debtors to be insolvent. This conclusion led to the formation of Seven Fields,
> a corporation organized, according to the Amended Plan, to "achieve the goal
> of full payment" of the unsecured nondischargeable debt due appellants.

3265506.1 118609-112672

> Certainly this aspect of the plan, based at least in part on Ernst & Young's representations that the Debtors were insolvent, was a significant factor in bringing about the court's confirmation of the plan.

*Id*. at 261.

Then, relying on the Fifth Circuit's decision in *In re Southmark Corp.*, 163 F. 3d 925 (5th Cir. 1999), the *Seven Fields* Court explained "why this type of misconduct and relationship to the bankruptcy court falls within the 'arising in' jurisdiction of the federal courts":

> In this case, the professional malpractice claims alleged against [the defendants] are inseparable from the bankruptcy context. A *sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible ***for managing the debtor's estate*** in the best interest of creditors . . . . Although standards for the conduct of court-appointed professionals, the breach of which may constitute bankruptcy malpractice, are not comprehensively expressed in the statute, the Code need not duplicate relevant, also-applicable state law. It is evident that a court-appointed professional's dereliction of duty could transgress both explicit Code responsibilities and applicable malpractice standards.

505 F.3d at 261 (quoting *Southmark*, 163 F. 3d at 931) (emphasis added).

In other words, it was the court-appointed professional's conduct **towards the debtor** and that conduct's direct impact on the administration of the bankruptcy estate that resulted in "arising in" jurisdiction. The state law causes of action being brought (bankruptcy malpractice), although not directly written into the Bankruptcy Code, were so self-evident by implication within the Code, that the alleged conduct, if true, would plainly transgress Bankruptcy Code responsibilities. Here, that is nowhere near the case. The state law causes of action against Hilco are all predicated on conduct towards non-debtors that, while in theory may result in indemnification obligations, have no direct impact on the bankruptcy estates whatsoever.

As for "related to" subject matter jurisdiction, Plaintiffs acknowledge it would not be unreasonable for the Court to conclude such jurisdiction exists because the debtors' purported

indemnification obligations to Hilco "could 'conceivably' [cause Plaintiffs' claims to] have an effect on the estate being administered." *Stoe*, 436 F.3d at 218. But this determination ultimately falls on what the Court considers "conceivable" to mean. That is, in a vacuum Plaintiffs' claims could in theory trigger the debtor's indemnification obligations to Hilco. In reality, the debtors are insolvent and there is nothing for Hilco to pursue, and so Plaintiffs' claims will not conceivably have any impact on the debtors' bankruptcy estates.

## II.    Permissive Abstention Is Warranted.

Under 28 U.S.C. § 1334(c)(1), courts have discretion "in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Courts have identified twelve relevant factors regarding the abstention inquiry:

> (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty of unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of the right to a jury trial; and (12) the presence of non-debtor parties.

*In re SemCrude, L.P.*, 428 B.R. 82, 101 (Bankr. D. Del 2010); (quoting *In re Mobile Tool Int'l*, 320 B.R. 552, 556-57 (Bankr. D. Del. 2005)); *see also LaRoche Indus. Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.*), 312 B.R. 249, 254 (Bankr. D. Del. 2004).

"Not all factors will be applied in each case, and '[c]ourts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no

3265506.1 118609-112672

one factor is necessarily determinative.'" *In re Broad Street Media LLC*, 2017 WL 5624879, at \*10 (Bankr. D. N.J. 2017) (quoting *Shalom Torah Centers v. Philadelphia Indem Ins. Companies*, 2011 WL 1322295, at \*4 (D.N.J. 2011) (further citations omitted). "A court has wide latitude under 28 U.S.C. § 1334(c)(1) to 'permissively abstain from any proceeding over which it has jurisdiction.'" *In re Essar Steel*, 47 F. 4th at 201 (quoting *Bricker v. Martin*, 348 B.R. 28, 34 (W.D. Pa. 2006). Here, most, if not all of factors support abstention.

First, the outcome of Plaintiffs' claims will have no practical impact on the efficient administration of the debtors' estates. Although Hilco may attempt to pursue indemnification claims against the debtors, they have not, and likely will not, because they know the debtors are insolvent. To the extent the Massachusetts District Court determined Plaintiffs' claims may have an impact on the debtors' bankruptcy estates, it goes without saying that it had no information concerning the debtors' financial state and lacked the same appreciation for the status of the bankruptcy proceedings that this Court has.

Second, state law issues overwhelmingly predominate over bankruptcy issues. Plaintiffs' claims are predicated on whether Hilco's conduct towards non-debtors renders it a joint employer giving rise to state law wage and hour liability, and whether Hilco is liable under state common law causes of action for its alleged misrepresentations/promises concerning the retention bonuses.[2] The potential need for interpretation of this Court's Final Store Closing is hardly a basis to conclude that bankruptcy issues predominate or that another court could not address Hilco's Final Store Closing Order argument. "'Orders of bankruptcy courts, like those of other courts, can also be interpreted by other courts of competent jurisdiction.'" *In re G-I Holdings, Inc.*, 580 B.R. 388, 428 (Bankr. D.N.J. 2018) (quoting *In re Kmart Corp*, 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004) (further citations

---

[2] The Final Store Closing Order is wholly irrelevant to Plaintiffs' common law claims as those claims are not predicated on establishing that Hilco was a joint employer.

8

omitted). "'[S]tate courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation.'" *Id*. (further citations omitted).

Moreover, interrelated with these state law issues is the presence of an ongoing related state court proceeding. In Massachusetts state court, Plaintiffs are currently pursing claims against the former principals of the Christmas Tree Shop, the Salkovitzes, and its former CFO Marjorie Kaufman, alleging that they are jointly and severally liable for the exact same wage violations Plaintiffs are pursuing against Hilco in this matter. *See* docket in the matter of *Corbin et al v. Salkovitz et al*, Plymouth County Superior Court docket no. 2383cv00717, attached as **Exhibit A**.

Third, there is no federal jurisdictional basis other than 28 U.S.C. § 1334. The Massachusetts District Court correctly held that there was no jurisdiction under the Class Action Fairness Act ("CAFA") because "the local controversy exception to CAFA does apply and this court may not base federal jurisdiction over this lawsuit on CAFA."

Fourth, Plaintiffs' claims are remote to the main bankruptcy case proceedings and not a "core" proceeding. The claims do not fall within the illustrative list of core proceedings set forth in 28 U.S.C. § 157(b)(2).  Further, the claims do not invoke a substantive right provided by the Bankruptcy Code and do not by their nature arise only in the context of the bankruptcy case. *Halper v.* Halper, 164 F.3d 830, 836 (3d Cir. 1999).  For these reasons, it is plainly feasible to sever Plaintiffs' state law claims from core bankruptcy matters to allow judgments to be entered in the state court.

Fifth, while Hilco may not be forum shopping in this case, it is far more logical for a class case in which the putative class is comprised of hundreds of Massachusetts residents seeking remedies under Massachusetts state law, to have their claims adjudicated in a Massachusetts forum.

3265506.1 118609-112672

Sixth, Plaintiffs have a right to a jury trial on their claims. *See Nei v. Burley*, 388 Mass. 307, 314 (1983) ("Article 12 of the Massachusetts Declaration of Rights guarantees that 'no subject shall be . . . deprived of his property, . . . but by the judgment of his peers . . . .'").

Seventh, this matter is solely comprised of non-debtor parties.

At bottom, every factor either weighs in favor of, or is neutral towards abstention. At its core, this is a dispute exclusively between non-debtors, that only raises state law claims, that is directly related to a pending Massachusetts state court proceeding, and that will never have any practical impact on debtor's bankruptcy estate. Abstention is warranted.

Dated: October 29, 2025
    Wilmington, Delaware

/s/ *Katharina Earle*
Katharina Earle (No. 6348)
**GIBBONS P.C.**
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Tel: (302) 518-6300
Email: kearle@gibbonslaw.com

*and*

Mark B. Conlan (admitted *pro hac vice*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Email: mconlan@gibbonslaw.com

*Counsel for Christopher Corbin and Rich
Seronick, Individually, and on behalf of all others
similarly situated.*

10